**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Timothy Logsdon

    v.                                        Civil No. 16-cv-502-LM

William Wrenn, Commissioner,
New Hampshire Department of
Corrections, et al.[1]

## REPORT AND RECOMMENDATION

Before the court is plaintiff Timothy Logsdon's motion for a preliminary injunction (Doc. No. 2). Defendants filed an objection (Doc. No. 20), and Logsdon filed a reply (Doc. No. 29). Defendants filed a surreply (Doc. No. 34), and Logsdon filed a response to that surreply (Doc. No. 35). Logsdon's request for preliminary injunctive relief has been referred to the undersigned magistrate judge for a report and recommendation as to disposition. See July 13, 2017 Order.

## Background

Logsdon, an inmate at the New Hampshire State Prison

---

[1]The defendants named in the complaint are New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn, New Hampshire State Prison ("NHSP") Warden Michael Zenk, NHSP Director of Security and Training Chris Kench, and (former) DOC Victim Services Coordinator Amanda Breen. Each of these defendants is sued in his or her individual and official capacities.

("NHSP"), is serving a 10-30 year sentence for a 2006 felony
sexual assault committed against his then three-year-old
daughter, J.L.  In his motion for preliminary injunctive relief,
Logsdon claims that the defendants are improperly denying him
visits with his three minor children, J.L., P.L., and F.L.,
their mother Marylisa Logsdon, from whom he is divorced, and his
ten-year-old nephew, in violation of Logsdon's First Amendment
right to familial association.  Logsdon seeks an Order from this
court directing prison officials to approve Logsdon's children,
ex-wife, and minor nephew to visit him at the prison.

The court gleans the following facts from parties'
submissions in this matter.  Logsdon was sentenced in December
2009 in the New Hampshire Superior Court.  See State v. Logsdon,
No. 219-2009-CR-00190 (N.H. Super. Ct., Strafford Cty.).   At
that time, the sentencing court imposed, as a condition of
Logsdon's sentence, that Logsdon have no contact with J.L.
"except as allowed by Family Court orders," no unsupervised
contact with children younger than sixteen, and no contact with
Marylisa.  Id. (Order Dec. 9, 2009).

On March 31, 2010, the Dover Family Court ("DFC") issued a
Final Parenting Plan ("FPP") in Logsdon's divorce proceedings.
The FPP indicated that Logsdon could exchange letters with his

children as recommended and permitted by J.L.'s therapist, Nancy Hoag, who is also the family therapist for F.L. and P.L., and that the children's telephone or in-person contact with Logsdon, while not recommended by the therapists at the time the FPP issued, could occur in the future if, when, and under such conditions as may be recommended by the children's therapists.

In February 2013, Logsdon requested and received approval for his children to visit him at the prison.  In June 2015, Logsdon requested and received approval for Marylisa to visit him.  In December 2015, the children, Marylisa, and other relatives of Logsdon participated in a family holiday party held at the prison.  Logsdon further alleges that he had other visits with his children and Marylisa, which were conducted without incident and in accordance with the children's therapists' recommendations.  Logsdon also had at least one visit with his nephew, who, in December 2009, had been approved to visit Logdson with an adult escort, prior to the removal of his nephew from his approved visitors' list.

In May 2016, Logsdon requested approval for his children and Marylisa to attend a Father's Day event at the prison to be held the following month.  The request was denied, as his children and Marylisa had been removed from his active visitor

list.  In response to Logsdon's inquiry, defendant Amanda Breen,

who was then the Administrator of Victim Services for the New

Hampshire Department of Corrections, advised Logsdon that the

visits were disallowed because the terms of Logsdon's sentence

and the FPP included specific approval of written correspondence

between Logsdon and his children, but did not provide specific

information concerning visits.

The prison initially stated that his visitation approvals

had been revoked because his sentence and/or the FPP included a

"no contact with minors" provision.  Logsdon's initial

sentencing order included the following provision: No contact

with J.L. except as allowed by Family Court orders.  No

unsupervised contact with any child under 16 years of age.  No

contact with Marylisa Logsdon."  State v. Logsdon, No. 219-2009-

CR-00190 (N.H. Super. Ct., Strafford Cty. Dec. 1, 2009).  On

August 25, 2016, the sentencing court amended Logsdon's sentence

to remove the contact limitations included in his sentence,

pursuant to State v. Towle, 167 N.H. 315 (2015).[2]  Logsdon

advised Amanda Breen, the New Hampshire Department of

_____

[2]In Towle, the New Hampshire Supreme Court found that New
Hampshire sentencing courts exceeded their statutory sentencing
authority by including a "no contact" order as part of a
sentence.

4

Corrections ("DOC") Administrator of Victim Services, that his
sentencing order had been amended to remove the limitations on
contact with his children and Marylisa.  Breen, and other prison
officials, agreed to look into the matter and to advise Logsdon
as to whether visits with his children and Marylisa would be
reinstated.

On August 26, 2016, Hoag sent a letter to Breen and Zenk,
advising them that it was the recommendation of Hoag, as well as
P.L.'s individual therapist, that the children be allowed to
visit their father if they wanted to, in accordance with terms
established by the therapist, including, among other things, the
supervision of the visits by Marylisa and another adult,
limitations on physical contact and affection between Logsdon
and the children, and the ability of the children to refuse or
terminate the visit at any time.  See Aug. 26, 2016 Letter (Doc.
No. 13-1) ("August 26 Letter").  After receiving the August 26
Letter, Breen and other prison officials were concerned that
Hoag did not have sufficient information concerning the prison's
limited ability to provide supervision for Logsdon's visits to
ensure that the conditions identified as necessary by Hoag were
met.  Further, prison officials were concerned that Hoag had
made her recommendations without first having seen a copy of the

sexual offender evaluation Logsdon had undergone at the prison.

In November 2016, in an email, Hoag told Breen that she would send a revised letter with updated recommendations as to Logsdon's visits with his children once she received a copy of Logsdon's sexual offender evaluation.  While it appears that Logsdon refused to consent to Breen sending Hoag a copy of the evaluation, it further appears that Logsdon sent Hoag a copy of the evaluation himself after November 2016.

Hoag also noted in the November 2016 email that J.L. had elected not to have telephone or in-person visits with her father.  That statement concerned Breen, as it was seemingly inconsistent with Hoag's statement in the August 26 Letter that J.L. had felt safe and comfortable during her previous visits with her father.

In two letters sent in March 2017,[3] Hoag clarified her previous statements and stated that J.L. had not regretted her prior visits with Logsdon, but had simply changed her mind in the fall of 2016 about continuing those visits.  Further, Hoag stated, J.L. wanted the opportunity to have telephone or in-

---

[3]Breen resigned her position with the DOC in February 2017. After that, Hoag's communications were with NHSP Warden Michael Zenk and the new DOC Victim Services Administrator Nicole Kipphut.

person contact with Logsdon if she so desired in the future. Hoag also stated that P.L. and F.L. continued to want to have telephone and in-person contact with Logdson, and that Hoag continued to recommend that all of the children be allowed, at their option, to have such contact.  Hoag did note that, to the extent Logsdon's successful participation in sexual offender treatment at the prison was conditioned on limitations on some or all contact with his children, she supported the enforcement of those limitations.

The record in this case indicates that Logsdon has now begun sexual offender treatment and that, as a condition of admission to that program, Logsdon had to agree not to attempt to contact J.L.  The record further indicates that Logsdon is prevented from having contact with his other children, his ex-wife, or his nephew, at this time, only by the refusal of prison officials to approve those individuals for visits.

## Discussion

### I.    Preliminary Injunction Standard

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" <u>Glossip v. Gross</u>, 135 S. Ct. 2726, 2736 (2015) (citation omitted); <u>see also</u> <u>Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011).  "[T]he first two factors, likelihood of success on the merits and of irreparable harm, [are] 'the most important'" in the calculus." <u>Bruns v. Mayhew</u>, 750 F.3d 61, 65 (1st Cir. 2014); <u>see</u> <u>Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño</u>, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) ("Though each factor is important . . . 'the sine qua non of [the] four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'" (citation and alterations omitted)); <u>Esso Std. Oil Co. v. Monroig-Zayas</u>, 445 F.3d 13, 18 (1st Cir. 2006) (if movant cannot demonstrate likelihood of success on the merits, preliminary injunctive relief is properly denied without further analysis); <u>Voice of the Arab World, Inc.</u>, 645 F.3d at 32 ("'[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" (quoting

11A C. Wright, A. Miller & M. Kane, <u>Federal Practice & Procedure</u>
§ 2948, at 129 (2d ed. 1995))).  The burden of proof is on the
movant.  <u>See</u> <u>Esso Std. Oil Co.</u>, 445 F.3d at 18.

The court may rule on a motion for a preliminary injunction
on the papers if it has before it "'adequate documentary
evidence upon which to base an informed, albeit preliminary
conclusion,'" and the parties have been afforded "'a fair
opportunity to present relevant facts and arguments to the
court, and to counter the opponent's submissions.'"  <u>Campbell
Soup Co. v. Giles</u>, 47 F.3d 467, 470-71 (1st Cir. 1995)
(citations omitted).  The parties have had such an opportunity
to date, and an additional opportunity is provided by the
objection period that follows the issuance of this Report and
Recommendation.

## II.  <u>First Amendment Right to Familial Association</u>

While a prisoner loses many of his constitutional rights
upon incarceration, he "retains those First Amendment rights
that are not inconsistent with his status as a prisoner or with
the legitimate penological objectives of the corrections
system."  <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).
"[F]reedom of association is among the rights least compatible
with incarceration," and "[s]ome curtailment of that freedom

must be expected in the prison context." <u>Overton v. Bazzetta</u>,

539 U.S. 126, 131 (2003).

Prison policies limiting the First Amendment right of

association will be deemed valid if the limiting regulations are

reasonably related to legitimate penological objectives. <u>See</u>

<u>Overton</u>, 539 U.S. at 132 (citing <u>Turner v. Safley</u>, 482 U.S. 78,

89 (1987)).

> Four factors are relevant in making this
> determination: "(1) whether there is a valid, rational
> connection between the regulation and the legitimate
> government interest put forward to justify it; (2)
> whether alternative means to exercise the right exist;
> (3) the impact that accommodating the right will have
> on prison resources; and (4) the absence of
> alternatives to the prison regulation."

<u>Lebaron v. Spencer</u>, 527 F. App'x 25, 31–32 (1st Cir. 2013)

(quoting <u>Kuperman v. Wrenn</u>, 645 F.3d 69, 74 (1st Cir. 2011)).  A

court evaluating a claim that a prison regulation interfered

with an inmate's rights under the First Amendment must accord

prison administrators significant deference in defining

legitimate goals for the corrections system, and for determining

the best means of accomplishing those goals.  <u>See</u> <u>Overton</u>, 539

U.S. at 132.  The inmate bears the burden of showing that the

policy was not reasonably related to legitimate objectives, and

was instead an exaggerated response.  <u>See</u> <u>id.</u>

In this case, prison officials have restricted the exercise of Logsdon's First Amendment right to familial association during his incarceration by removing Logsdon's children, their mother, and Logsdon's nephew from Logsdon's approved visitor list, resulting in Logsdon's inability to have in-person visits with those individuals.  Applying the factors set forth above, the court therefore considers whether the restriction is reasonable.

    A.   <u>Logsdon's Children</u>

Defendants contend that the restriction on Logsdon's visits was effected with the objectives of protecting Logsdon's children's safety, and to enforce the FPP.  In support of that contention, defendants assert that the prison does not have the ability to insure that visits between Logsdon and his children are conducted in accordance with the guidelines Hoag has identified as necessary to protect the children, due to the limited personnel resources available in the visiting room. Because the FPP requires that any in-person visits between Logsdon and his children occur in accordance with Hoag's guidelines, the prison, therefore, is also unable to insure that Logsdon's visits with his children will comply with the FPP.

As to the first factor, the protection of child visitors at the prison is a legitimate penological interest. See Overton, 539 U.S. at 133 (restrictions on prison visitation by children serve legitimate penological interest in "protecting children from harm"). To the extent the visit restriction was imposed to insure compliance with the FPP, a court order insuring the protection of the children's safety concerning contact with Logsdon, the basis for the restriction is equally legitimate. The restriction is thus rationally related to the DOC's valid interest in protecting children from harm and complying with court orders.

As to the second factor, Logsdon has not shown that he has no alternative means of protecting his First Amendment right to maintain a familial association with his children. "Alternatives to visitation need not be ideal, however; they need only be available." Overton, 539 U.S. at 135 (finding phone calls are sufficient substitutes to protect an inmate's First Amendment right to visitation). The record reflects that prison officials have not sought to prevent or restrict his ability to correspond with his children in writing, or to speak to with them by telephone. Those means of associating with his children remain available to him.

12

Regarding the third factor, concerning the impact of accommodating Logsdon's visits with his children, defendants assert that the NHSP visiting room staff resources are insufficient to ensure the children's safety during such visits. Logsdon has not demonstrated that accommodating his request for visits with his children would not create a need for significant reallocation of DOC personnel, to ensure that Logsdon's visits with his children were in compliance with the FPP. Logsdon suggests that the adults accompanying his children to the prison visits, with Hoag's approval, would be able to insure compliance with the FPP. The court will not second guess prison officials' decision not to relinquish their interest in insuring the safety of children visiting the prison to third parties. Plaintiff did not offer evidence of any alternative means of accommodating his asserted right to visit with his children that would not impose more than a de minimus strain on the NHSP's resources. Logsdon has thus failed to demonstrate that the restriction on Logsdon's ability to visit with his children was an exaggerated response to the defendants' legitimate concern with the safety of the children and compliance with the FPP.

Accordingly, the court concludes that, while the restriction on Logsdon's visits with his children impinges on

his First Amendment right to familial association, it does not do so in an unconstitutional manner.  Because Logsdon has not demonstrated that his First Amendment rights have been unconstitutionally abridged, he has not demonstrated that he is likely to succeed on the merits of his First Amendment claim, with respect to the restrictions relating to his children.

       B.    Ex-Wife, Nephew, and Other Relatives Who Are Minors

       Logsdon has asserted that he has not been allowed visits with his ex-wife, nephew, and other relatives who are minors. However, Logsdon has not demonstrated that these family members want to visit him (other than to the extent Marylisa must accompany the children on their visits with Logsdon), and that he has requested and been denied visits, that do not include his children, with any other family member, after the August 25, 2016 rescission of the contact limitations in his sentencing order.  Accordingly, as to relatives other than his children, Logsdon has failed to show that he cannot receive such visits without a court order, and has thus failed to show that he will be irreparably harmed if the court fails to order the prison to allow those visits.  For that reason, injunctive relief should be denied at this time as to visits with his ex-wife, minor nephew, and other relatives under the age of eighteen.

### III. <u>Fourteenth Amendment Right to Due Process</u>

In this action, Logsdon has asserted that his right to procedural due process was violated when his visits with his children, Marylisa, and his nephew were restricted without notice or process.  Due process requirements apply only to the deprivation of protected interests in life, liberty, or property.  <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976); <u>González-Fuentes v. Molina</u>, 607 F.3d 864, 880 n.13 (1st Cir. 2010).  For the reasons stated above, Logsdon has failed to assert the deprivation of a protected liberty interest in familial association.  Accordingly, Logsdon cannot demonstrate that he was entitled to procedural due process under the Fourteenth Amendment, and therefore has failed to demonstrate that he is likely to succeed on his due process claim.

### IV. <u>Preliminary Injunctive Relief</u>

Because the court finds that Logsdon has failed to demonstrate that he is likely to succeed on the merits of his claims in this action, he is not entitled to preliminary injunctive relief.  <u>See</u> <u>Sindicato Puertorriqueño</u>, 699 F.3d at 10 ("'[I[f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of

15

idle curiosity.'" (citation omitted)).  Accordingly, the motion for preliminary injunctive relief should be denied.

### Conclusion

For the foregoing reasons, the district judge should deny plaintiff's motion for a preliminary injunction (Doc. No. 2). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

Andrea K. Johnstone
United States Magistrate Judge

July 25, 2017

cc:  Timothy A. Logsdon, pro se
     Heather Dunion Neville, Esq.
     Kenneth A. Sansone, Esq.

16